[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-16746
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 9, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-01461-CV-ORL-19GJK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

THEODORE T. NAVOLIO, as Trustee of
the Ivan D. Saxe Living Trust
Dated April 21, 1970, as Amended
and Restated January 26, 1998,

Defendant-Appellant,

SEIKO KANEYAMA, as Trustee of the
Ivan D. Saxe Living Trust Dated
April 21, 1970, as Amended and
Restated January 26, 1998,
et al.,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 9, 2009)

Before DUBINA, Chief Judge, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Following a bench trial in this foreclosure action, Theodore T. Navolio appeals pro se the district court's order entering judgment in favor of the Internal Revenue Service ("IRS") and ordering the sale of his property. After review, we affirm.

## I. BACKGROUND

### A. Complaint

The government instituted this civil action to foreclose federal tax liens against several parcels of real property owned by Navolio. According to the government, Navolio owed $183,788.49 for tax years 1989 through 1993 and refused to pay after notice of the assessments and demand for payment.

Navolio, proceeding pro se, contended that he never received the required notice of the assessments against him, referred to as the statutory notice of deficiency, or a demand for payment. In denying the government's motion for summary judgment, the district court concluded that there was a genuine issue of material fact as to whether the IRS had exercised reasonable diligence in determining Navolio's last known address for purposes of sending him the statutory notice of deficiency.

Prior to trial, the district court entered a case management and scheduling order that required the parties to meet in person before trial and examine all the trial exhibits that they expected to introduce into evidence. Additionally, the parties filed a joint pretrial statement containing the government's evidence list.

**B.  Bench Trial**

At a bench trial, Navolio testified that he was incarcerated for securities fraud from April 1994 until February 1996. Originally incarcerated in Florida, Navolio was moved to a prison in South Carolina in June 1995. At some point, Navolio was transferred to a prison in Nevada, where he was released in February 1996. After his release, Navolio spoke with an IRS criminal investigation division ("CID") agent about appearing as a witness in a tax prosecution. Navolio agreed and testified in two tax crime cases in March and October 1996. He received a letter from a CID agent thanking him for his assistance.

IRS agent Cathleen Curry testified that IRS documents, including the tax return account receipt and the tax modules for 1992 and 1993, indicated that the IRS had issued a statutory notice of deficiency. Curry said that a tax module is a snapshot of everything that has happened to a taxpayer's account separated by year. Curry explained that she could tell from certain codes on the documents that the notice had issued. Curry also testified that the IRS's records indicated that

3

Navolio's residence was 662 George Miller Circle, Port Orange, Florida. Curry acknowledged that Navolio's tax examination files for 1992 and 1993 could not be found.

The government then sought to introduce the 1992 and 1993 tax modules as exhibits 6 and 7. When the district court asked Navolio whether he had any objection, Navolio replied, "That's a mystery to me. I don't know. I don't understand that." The district court construed that statement as an objection and asked, "Is there an objection?" Navolio responded, "Thank you, Your Honor." The district court stated that "it appears that the officer has examined this and is capable of identifying it" and admitted exhibits 6 and 7 over Navolio's objection.

The government also introduced without objection a certified mail receipt that states, "Statutory notice of deficiency for the years indicated have been sent to the following taxpayer(s), date 10/11/95," and indicates that notices for the years 1988 through 1993 were sent to "Theodore T. Navolio" at three Florida addresses, the first of which was the Port Orange, Florida address.

Agent Curry further testified that the certified mail receipt showed that the IRS had issued notices of deficiencies for 1988 through 1993 by mailing them in October 1995 to three different addresses in Florida and that there was no indication that any of the mailings were returned as undeliverable. Curry

explained that the IRS determined a taxpayer's residence by examining the federal tax returns and asking the post office about last known addresses. Because Navolio never notified the IRS of a change in address, the IRS sent the notices to the last known address it had in its records. Curry also explained that the civil division of the IRS had no communication with the CID.

Roger Maurice, an IRS agent, testified about the IRS's established procedures used to determine the last known address to which a deficiency notice would be sent. According to Maurice, the procedures included searching the IRS Masterfile database for the last known address on record for the taxpayer, examining third-party payor information, such as 1099 forms or W-2s, and examining the case file for any correspondence or contact with the taxpayer. The IRS agent would send the notice to every address he could find.

Like Curry, Maurice indicated that certain codes on the tax modules in exhibits 6 and 7 showed that the IRS had issued a deficiency notice. Maurice explained that the first address listed on the certified mail receipt (the Port Orange, Florida address) would have been the last known address for Navolio obtained from the IRS's master file and that the two other addresses would have been alternate addresses the IRS located during its search. Maurice explained that, in 1995, IRS clerks would hand-deliver the notices to the post office and get

confirmation of receipt from the post office. Maurice stated that this procedure was followed in Navolio's case and identified the particular IRS employee, now deceased, who delivered Navolio's notice to the post office. Finally, like Curry, Maurice stated that an examining IRS agent typically would not have contact with the CID unless the agent had some reason to know that the CID was investigating the taxpayer.

During Maurice's testimony, the government sought to introduce several undisclosed documents that Maurice had located within the previous week. Navolio objected to their admission because they were not provided to him prior to trial or listed in the pre-trial stipulation. The district court sustained Navolio's objection.

In closing, the government argued that Navolio had failed to advise the IRS of his address change and that the civil division had followed its standard procedures, which did not include contacting the CID, in sending out Navolio's notices of deficiencies. Navolio argued that he did not understand how the IRS's civil division could have trouble mailing him the notice, given that he had been in contact with multiple CID agents since his arrest in 1994.

The district court entered an order concluding that the IRS was entitled to foreclose its tax liens against Navolio's properties. Specifically, the district court

6

found that: (1) Navolio never notified the IRS of his change in address or relocation to Nevada; (2) the IRS sent a notice of deficiency in October 1995 by certified mail to three addresses in Florida, including Navolio's last known residential address; (3) the IRS found the other two addresses after searching the IRS Masterfile database, examining Navolio's case file for correspondence and third-party payor information and requesting postal tracers from the Postal Service; (4) Navolio's contacts with the CID agents did not mean that the civil division knew of his incarceration because the IRS's civil and criminal divisions generally did not share information; and, thus, (5) the IRS exercised reasonable diligence by following its standard procedures to obtain the last known address. The district court found the assessments and tax liens valid and entered judgment against Navolio.

## C.    Post-trial Motion

Navolio filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), arguing, inter alia, that the district court erred in admitting exhibits 6 and 7 because the government did not produce them before trial. The district court denied the motion, finding that the government had listed exhibits 6 and 7 in the joint pretrial statement and that there was no evidence that the parties had failed to comply with the court's pretrial order to meet before trial

and exchange copies of all trial exhibits. The district court also clarified that, while it had treated Navolio's statement during trial about exhibits 6 and 7 as an objection, Navolio had failed to specify the legal basis of the objection and did not argue that he had not seen the exhibits before trial. The district court noted that Navolio had successfully raised this precise objection regarding other government exhibits.

This appeal followed.

## II. DISCUSSION

### A. Admission of Exhibits 6 and 7

Ordinarily, we review for abuse of discretion a district court's rulings on the admissibility of evidence and will not reverse unless the appellant shows a "substantial prejudicial effect." Goulah v. Ford Motor Co., 118 F.3d 1478, 1483 (11th Cir. 1997). However, "reversible error may not be predicated upon a ruling which admits evidence unless a timely objection . . . appears of record." Id. (internal quotation marks omitted). Thus, where a party "foregoes an opportunity to object --- we do not entertain the objection on appeal." SEC v. Diversified Corporate Consulting Group, 378 F.3d 1219, 1227 (11th Cir. 2004). Furthermore, to properly preserve an objection for appeal, the objecting party must "state a specific ground of objection" and "a[n] objection on one ground will not preserve

an error for appeal on other grounds." Goulah, 118 F.3d at 1483 (internal quotation marks and citation omitted).

We decline to address Navolio's arguments regarding the admission of exhibits 6 and 7 because he failed to raise at trial the objection he raises now. Specifically, Navolio argues that the documents should have been excluded because the government did not provide them to him prior to trial. Although Navolio was twice asked by the district court whether he objected to the admission of these documents, he did not raise any legal basis for their exclusion. He certainly did not object to the documents on the grounds that the government had not disclosed them prior to trial.

More importantly, Navolio demonstrated exceptional proficiency in representing himself throughout the legal proceedings and, in fact, successfully raised this precise objection to other documents the government attempted to introduce.[1] Accordingly, Navolio's failure to raise this specific objection at trial when given the opportunity to do so forecloses our review of this issue on appeal.

## B. Fact Findings Regarding Notices of Deficiency

The IRS notifies a taxpayer of a tax deficiency by certified or registered

---

[1]Navolio has paralegal training and has filed past law suits against the United States. This experience and training clearly helped Navolio, who ably defended himself in the instant proceedings. Among other things, Navolio successfully opposed the government's motion for summary judgment and its motion to enforce a settlement agreement.

mail. 26 U.S.C. § 6212(a). The mailing of a valid notice of deficiency is a statutory prerequisite to a tax assessment and collection by the IRS. See 26 U.S.C. § 6213(a); Tavano v. Comm'r of Internal Revenue, 986 F.2d 1389, 1390 (11th Cir. 1993).

"This notice shall be sufficient if mailed to the taxpayer at his last known address." Pugsley v. Comm'r of Internal Revenue, 749 F.2d 691, 692 (11th Cir. 1985) (internal quotation marks omitted); see also 26 U.S.C. § 6212(b)(1). The taxpayer has "the burden of providing the IRS with a clear and concise notification of any change in address." Pugsley, 749 F.2d at 693 n.1 (quotation marks omitted). The IRS, however, must exercise reasonable diligence in determining the last known address. Johnson v. Comm'r of Internal Revenue, 611 F.2d 1015, 1021 (5th Cir. 1980).[2] We review a determination that the IRS mailed a notice of deficiency to the last known address of a taxpayer for clear error. Id. at 1019.

Here, Navolio has failed to show that the district court's fact findings – that the IRS conducted a reasonably diligent investigation to determine Navolio's address and mailed the deficiency notice to Navolio's last known address – were clearly erroneous. IRS agents testified to the agency's standard procedures for sending a notice of deficiency to a taxpayer's last known address and that a notice

---

[2]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), this Court adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

10

of deficiency was sent to Navolio's last known address in the master file by certified mail. It is undisputed that Navolio did not advise the civil division of the IRS of his multiple changes of address between April 1994 and February 1996. Further, there is no evidence that IRS agents in the civil division had actual knowledge at the time they issued the deficiency notices that Navolio was incarcerated for securities fraud and cooperating with the CID in tax crimes prosecutions. Although Navolio had contact with IRS agents in the CID during this time, the criminal and civil divisions ordinarily do not communicate with each other.

Navolio argues that exhibits 6 and 7 contain certain codes that should have indicated to the civil division that coordination with the criminal division was necessary. However, no evidence was presented at trial explaining the meaning of these codes or supporting an inference that they would have put the civil division IRS agents on notice that Navolio's address had changed.[3] Thus, district court did

---

[3]The district court did not err in not considering these codes. However, even if the codes are considered, Navolio still has failed to show clear error. According to the Internal Revenue Manual ("IRM"), a 914 transaction code ("TC") indicates that the CID is conducting a criminal investigation and a TC 912 "reverses" a TC 914. IRM §§ 5.4.13.3, 9.5.1.3.2.6(4)(B). While a TC 914 is "active," revenue officers are to contact the CID to "discuss potential problems prior to initiating contact with taxpayers," and "[i]f civil and criminal investigations are conducted simultaneously, close coordination and communication is necessary among all functions." IRM § 25.1.8.7. According to exhibits 6 and 7, a TC 914 was placed on Navolio's account on May 21, 1994 and a TC 912 was added on February 24, 1995.

Although no evidence was presented at trial as to the significance of these codes, there is evidence of such in the record. In response to Navolio's post-judgment Rule 59(e) motion, the

11

not err in concluding that the IRS acted with reasonable diligence in identifying

Navolio's last known address.

**AFFIRMED.**

---

IRS submitted a declaration of Agent Maurice explaining that a TC 914, in effect, freezes an account. The account is assigned to the CID and no other transactions are possible while the freeze is in place. When the CID inputs a TC 912, the freeze is lifted, which indicates that the criminal investigation is over. Thus, according to Maurice, the CID's investigation was over when civil division IRS agents prepared and issued the notice of deficiency on October 11, 1995. For this reason, Maurice averred, a civil division IRS agent would have no reason to contact the CID before issuing a deficiency notice. Thus, these codes do not establish that IRS's civil division agents who issued the deficiency notice acted without reasonable diligence.